UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELRON CATHEY,

        Petitioner,

        v.

RYAN WOODS, Warden of Sheridan Correctional Center,[1]

        Respondent.

No. 1:23-CV-03986

Judge Edmond E. Chang

MEMORANDUM OPINION AND ORDER

Elron Cathey was convicted in 2006 of aggravated battery with a firearm and sentenced to 40 years' imprisonment. R. 1, Pet. at 2.[2] He presents several theories why his trial and appellate counsel rendered ineffective assistance, which in his view entitle him to habeas relief, 28 U.S.C. § 2254. Pet. at 5–8. For the following reasons, Cathey's petition is denied, but the Court issues a certificate of appealability.

## I. Background

When considering habeas petitions, federal courts "focus on the decision of the last state court to rule on the merits of petitioner's claim." *Jewell v. Boughton*,

---

[1]"[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held," *Gamboa v. Daniels*, 26 F.4th 410, 414 (7th Cir. 2022) (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)), so the Court substitutes Ryan Woods as the proper respondent under Civil Rule 25(d). *See* R. 35, Notice of Change of Address (providing that Cathey is currently held at the address of Sheridan Correctional Center).

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. Unless otherwise noted, citations are to the PDF page numbers of the filing. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 2241.

90 F.4th 1199, 1202 (7th Cir. 2024) (cleaned up).[3] And federal courts presume as correct the state court's factual findings, unless the petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 571 U.S. 12, 18 (2013). Although Cathey asserts that some of the state court's factual findings are wrong, he fails to overcome the presumption of correctness, so this factual background is taken from the Illinois Appellate Court's opinion. *People v. Cathey*, 2022 WL 17812735 (Ill. App. Ct. Dec. 19, 2022) (*Cathey III*).

## A. Offense

On June 8, 2004, Cathey and three others were approaching the area where Xavier Finley was sitting on a porch with friends at the intersection of 84th Street and Colfax Avenue in Chicago. *Cathey III*, 2022 WL 17812735 ¶ 4. Xavier phoned his brother Brian Finley, asked Brian to pick him up, and then went home. *Id.* ¶¶ 4–5. Brian picked up Maurice Sterling and hurried to the scene in a car. *Id.* ¶ 6. Once there, Brian confronted Cathey's group to ask about Xavier's whereabouts. *Id.* ¶ 7. After a brief verbal altercation, Brian and Sterling saw someone else in the group hand Cathey what appeared to be a gun, so the two of them ran back to their car. *Id.* But before they could get into the car and drive off, Sterling was shot in the head. *Id.* ¶¶ 7, 12. Brian managed to pull Sterling into the car and drive home. *Id.* ¶ 7. (Brian originally told police officers that Sterling had been shot while Brian was driving

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

home, but he later "changed his story." *Id.* ¶ 10.) Neither Brian nor Sterling had a gun that night. *Id.* ¶ 11.

Once Brian and Sterling reached the Finleys' home, Brian's mother phoned the police. *Cathey III*, 2022 WL 17812735 ¶ 8. Speaking with a detective, Brian identified Cathey as the shooter. *Id.* When officers went to find Cathey, they observed him "sweating profusely" and recovered a live cartridge (that revealed no fingerprints) from a nearby windowsill, but did not find a firearm. *Id.* ¶¶ 15–17 (cleaned up). A forensic investigator photographed the damage to the car, noting "apparent bullet damage" to the passenger-side windshield and "a large quantity of blood in the interior." *Id.* ¶ 13 (cleaned up). (No blood was found outside of the car at the scene. *Id.* ¶ 45.) The investigator also tested Brian and Cathey for gunshot residue, and those results came back negative for Brian but positive for Cathey on his left hand. *Id.* ¶¶ 13, 18. The police then arrested Cathey, who told the officers, "You got to do what you got to do." *Id.* ¶ 15.

## B. Jury Trial

As Cathey prepared for trial, his counsel filed a motion in limine, seeking to exclude for impeachment purposes (that is, were Cathey to testify at trial) Cathey's prior convictions for attempted murder and aggravated battery with a firearm. *People v. Cathey*, 965 N.E.2d 1109, 1111 (Ill. 2012) (*Cathey I*).[4] As relevant to Cathey's present petition, counsel argued that the trial court needed to resolve the motion in

---

[4]The Court relies on an earlier decision in Cathey's post-conviction proceedings for some facts because that is when they were last recounted.

limine ahead of trial because the outcome would affect whether Cathey would testify. *Id.* at 1111–12. The trial court declined to rule before trial because, in its view, whether to exclude Cathey's prior convictions depended on the extent to which Cathey's counsel impeached the State's witnesses. *Id.* at 1112.

At trial, the Finleys, whose testimony described the events of the shooting, clarified some of their statements. Xavier testified that when he called Brian, he asked Brian only to pick him up and did not suggest that Cathey was trying to harm him. *Cathey III*, 2022 WL 17812735 ¶ 5. Brian, meanwhile, attested that Xavier told him that Cathey was trying to kill him. *Id.* ¶ 10. And instead of driving to the mutually agreed pick-up spot, Brian drove toward Cathey's home to confront him. *Id.*

The gunshot-residue analyst also testified. He discussed the test results for both Brian and Cathey, and he explained that the positive result for Cathey meant that Cathey "discharged a firearm, contacted an item with primer gunshot residue on it, or was in the environment of a firearm when it was discharged." *Cathey III*, 2022 WL 17812735 ¶ 18. And he acknowledged a possibility that someone might be exposed to gunshot residue yet test negative, as Brian did. *Id.* ¶ 19.

Cathey then testified on his own behalf and advanced a theory of self-defense. *Cathey III*, 2022 WL 17812735 ¶¶ 20–21. In his version of the events, he was walking home when two men—Brian and Sterling—jumped out of a vehicle and confronted him. *Id.* ¶ 20. Brian then brandished a revolver and told Cathey not to run, so Cathey wrestled with Brian for control of the firearm. *Id.* Cathey's left hand ended up on top of Brian's left hand, which had a finger on the trigger, and the firearm discharged.

*Id.* Cathey then ran home. *Id.* Even while speaking with the police, Cathey denied having a firearm and did not know that someone had been shot. *Id.* ¶¶ 21–22. Cathey stated that he continually maintained to officers that he acted in self-defense. *Id.* ¶ 21.

After Cathey testified, the State moved to admit his prior convictions for possession of a controlled substance (from 2002) and for aggravated battery and attempted first-degree murder (from 1992). *Cathey I*, 965 N.E.2d at 1113. Cathey's counsel contemporaneously objected, arguing that he had deliberately avoided impeaching Brian—the prosecution's witness—with Brian's prior conviction for possession of a firearm so that the State in turn could not impeach Cathey with the prior battery-and-attempted-murder convictions, which counsel argued were more prejudicial than probative anyway. *Id.* Striking a balance, the trial court allowed the State to impeach Cathey with the prior convictions for possession of a controlled substance and for aggravated battery, but not for attempted first-degree murder. *Id.* In closing argument, the State referred to the drug and battery convictions to suggest that Cathey had a strong interest to lie. *Id.*

A few more witnesses took the stand. A neighbor who sat on a porch four or five houses away from the incident saw two men get out of a car before a verbal altercation and physical struggle ensued. *Cathey III*, 2022 WL 17812735 ¶ 23. Then a gun went off, and the neighbor ran into the house. *Id.* A police officer also testified that Cathey never acknowledged that an altercation had even happened or that a gun was fired. *Id.* ¶ 24.

5

At trial's end, Cathey was convicted of aggravated battery with a firearm (but acquitted of attempted first-degree murder) and sentenced to 40 years' imprisonment. *Cathey III*, 2022 WL 17812735 ¶ 26; Pet. at 2. On direct appeal, Cathey was represented by the same counsel as at trial, *Cathey I*, 965 N.E.2d at 1113, and his counsel pressed three arguments: there was insufficient evidence to convict Cathey; the trial court improperly admitted Cathey's prior conviction for aggravated battery because it was more prejudicial than probative; and Cathey's sentence was excessive, *Cathey III*, 2022 WL 17812735 ¶ 27. The Illinois Appellate Court affirmed, *id.*, and the Illinois Supreme Court denied Cathey's petition for leave to appeal, *Cathey I*, 965 N.E.2d at 1113.

### C. First Round of Post-Conviction Proceedings

Illinois courts evaluate post-conviction petitions using a three-stage process, *People v. Knapp*, 181 N.E.3d 875, 882 (Ill. 2020), which asks first whether the petitioner has "present[ed] the gist of a constitutional claim" and second if the petitioner has made "a substantial showing of a constitutional violation, *People v. Edwards*, 757 N.E.2d 442, 445–46 (Ill. 2001) (cleaned up). If the petitioner clears this second stage, then the trial court at the third stage holds an evidentiary hearing. *Id.* at 446.

In 2008, Cathey filed a post-conviction petition on his own, without a lawyer. *Cathey III*, 2022 WL 17812735 ¶ 28. Among other issues, he argued that (1) his counsel at trial and on direct appeal rendered ineffective assistance for not challenging the trial court's erroneous delay in ruling on the key motion in limine, which resulted in him taking the stand; and (2) he received ineffective assistance of counsel because

6

his trial counsel failed to request a specific jury instruction. *Cathey I*, 965 N.E.2d at 1113–14; *see also* R. 19-28, Exh. BB, First Post-Conviction Pet. The trial court summarily dismissed Cathey's petition at the first stage for being frivolous, and the Illinois Appellate Court affirmed after "addressing and rejecting both" of Cathey's contentions, *Cathey I*, 965 N.E.2d at 1114, which by that time were presented by post-conviction counsel, R. 19-6, Exh. F, First Rd. Post-Conviction Appellate Br. at 39.[5] Cathey then filed a counseled petition for leave to appeal to the Illinois Supreme Court, which granted his petition. *Cathey I*, 965 N.E.2d at 1111, 1114.

The Illinois Supreme Court reversed the first-stage dismissal of Cathey's post-conviction petition and remanded for further proceedings. *Cathey I*, 965 N.E.2d at 1118. Applying the standard for evaluating ineffective-assistance-of-counsel claims from *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Illinois Supreme Court concluded first that it was "at least arguable" that his counsel rendered deficient performance by not raising an argument on direct appeal about the trial court's delayed ruling on the motion in limine. *Cathey I*, 965 N.E.2d at 1115–17. And there similarly

---

[5]There is some discrepancy about whether Cathey made ineffective-assistance-of-counsel claims as to his counsel's trial or appellate performance on the motion in limine. For example, the Illinois Appellate Court evaluated his argument as centering on his counsel's failure to file a *post-trial* motion. *People v. Cathey*, 942 N.E.2d 1, 8–9 (Ill. App. Ct. 2010). His briefs, however, raised claims about his counsel's performance both at trial *and* on direct appeal. First Post-Conviction Pet. at 8; First Rd. Post-Conviction Appellate Br. at 28–38; R. 19-8, Exh. H, First Rd. Post-Conviction Appellate Reply Br. at 8–21. That presentation by Cathey suffices to make the discrepancy insignificant, *see Castille v. Peoples*, 489 U.S. 346, 350–51 (1989) (noting that presentation of issue, even if not considered by state court, preserves it for federal habeas review), and in any event, the Illinois Supreme Court addressed the merits of both threads of Cathey's argument on the motion in limine, so this discrepancy does not bar consideration of this argument, *see Pole v. Randolph*, 570 F.3d 922, 937 (7th Cir. 2009) (citing *Harris v. Reed*, 489 U.S. 255, 262 (1989)).

was "at least an arguable basis" that counsel's failure prejudiced Cathey. *Id.* at 1117–18. Without reaching the second argument that Cathey presented, the Illinois Supreme Court remanded for further proceedings. *Id.* at 1118.

### D. Second Round of Post-Conviction Proceedings

Back in the trial court at the second stage, Cathey's post-conviction counsel helped to supplement his petition. His post-conviction counsel added more to his original argument about trial and direct-appeal counsel's (the same lawyer for both) failure to raise a challenge to the delayed ruling on the motion in limine. R. 19-29, Exh. CC, Counseled Supp. at 2–8. Post-conviction counsel also newly argued that Cathey's counsel was ineffective at the trial level for not investigating Kendro Earl, who could have testified as a witness and potentially corroborated Cathey's testimony that Brian was the one who brought the firearm to the altercation. *Id.* at 8–9; *see also* R. 19-30, Exh. DD, Earl Aff. Cathey later raised another issue: that trial and direct-appeal counsel was ineffective for failing to argue that the exclusion of the conviction for attempted first-degree murder should have dictated exclusion of the aggravated-battery conviction for impeachment purposes under Illinois's "one-act, one-crime" doctrine. R. 19-31, Exh. EE, Pro Se Supp. at 2–7. Cathey also added a challenge to the charged statute's validity, and he contended that his trial and direct-appeal counsel was ineffective for not making this argument. *Id.* at 8–9.

The trial court dismissed his petition at stage two. R. 19-32, Exh. FF, Trial Court Order. As relevant to Cathey's federal habeas petition, the trial court rejected his various ineffective-assistance claims. *Id.* at 8–11. On Cathey's theory of

8

ineffectiveness relating to Earl, the trial court determined that Cathey was not prejudiced, even if his counsel performed ineffectively both at trial and on appeal. *Id.* at 10. And on the contested motion in limine, the trial court concluded that the outcome would have been the same, even if the motion had been resolved earlier, and that the record "does not show petitioner was convicted because of his own testimony." *Id.* at 11. Rather, the trial court highlighted Brian's testimony as an eyewitness, Cathey's behavior when located by the police, as well as the gunshot residue on his hands and "blood on his shirt."[6] *Id.* Finally, the trial court construed Cathey's reference to the one-act, one-crime doctrine as sounding in due process before rejecting the argument as an incorrect statement of law. *Id.* at 10.

Still represented by post-conviction counsel, Cathey appealed the trial court's second-stage dismissal. On appeal, however, Cathey's counsel raised only one argument: that his trial counsel was ineffective for failing to investigate Earl. R. 19-18, Exh. R, Second Rd. Post-Conviction Appellate Br. at 15–22; R. 19-20, Exh. T, Second Rd. Post-Conviction Reply Br. at 2–8. Cathey attempted to file a pro se supplement, raising his ineffective-assistance claims about the disputed motion in limine, R. 19-

---

[6]Although the trial court mentioned blood being found on Cathey's shirt, that fact appears nowhere else in the state court record, is not mentioned in the last reasoned state court decision, and is not relied on by the State in responding to Cathey's habeas petition. Cathey contends that this assertion is not true. R. 21, Reply Br. at 13, 25. As far as the Court can tell, the trial court referenced a related federal lawsuit that Cathey brought against several police officers in which the Seventh Circuit observed that Cathey's pleadings in the district court revealed that his shirt was stained with blood. *See Cathey v. Garcia*, 715 F. App'x 564, 566 (7th Cir. 2018) (non-precedential disposition); Am. Compl. at 23, *Cathey v. Garcia* (N.D. Ill. July 5, 2017) (No. 1:17-cv-00100) (forensic inventory). In any event, because this fact is not recited in the last reasoned state court decision, the Court does not consider it. *See Seats v. Nurse*, 152 F.4th 874, 882 & n.7 (7th Cir. 2025).

21, Exh. U, Pro Se Mot. to File Supp. at 1–5, but the Illinois Appellate Court denied Cathey's motion, *id.* at 7.

The Illinois Appellate Court affirmed the trial court's dismissal. *Cathey III*, 2022 WL 17812735 ¶ 2. Evaluating the only argument that Cathey's post-conviction counsel raised in the appeal, the Illinois Appellate Court considered only whether, assuming Cathey's trial counsel deficiently performed, Cathey was prejudiced by that performance. *Id.* ¶ 43. And although Earl—who was not an eyewitness—might have testified that Brian had a firearm at some point before the shooting, that alone would not support Cathey's testimony that Brian arrived at the site of the altercation armed. *Id.* ¶ 44. The Illinois Appellate Court instead cited other evidence in the record (the damage to the car and blood inside it; the live cartridge found near Cathey; and Cathey's omission of any altercation when speaking with the police) to conclude that Cathey failed to show a reasonable probability that Earl's testimony would have made a difference. *Id.* ¶¶ 45–46.

Cathey and his post-conviction counsel then filed separate petitions for leave to appeal to the Illinois Supreme Court. R. 19-23, Exh. W, Counseled Pet. for Leave to Appeal; R. 19-24, Exh. X, Pro Se Pet. for Leave to Appeal. On May 24, 2023, the Illinois Supreme Court denied both petitions. R. 19-25, Exh. Y, Order Denying Counseled Pet.; R. 19-26, Exh. Z, Order Denying Pro Se Pet. Cathey then timely filed in federal court this petition seeking a writ of habeas corpus. Pet.

## II. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights," *Cheeks v. Gaetz*, 571 F.3d 680, 685 (7th Cir. 2009) (cleaned up). A habeas petitioner must fully and fairly present his federal claims through one complete round of the state appellate review process before filing a federal habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

If a petitioner has failed to properly assert his federal claims at each level of state review, then his claims are procedurally defaulted. *See McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013). A claim is also procedurally defaulted when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, making the state court's refusal to adjudicate the claim an independent and adequate state ground for denying federal review. *Cone v. Bell*, 556 U.S. 449, 465 (2009). Either way, procedural default precludes federal-court review of a petitioner's habeas claims. *See Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012).

A habeas petitioner may overcome procedural default, however, either by demonstrating cause for the default and actual prejudice from the default, or by showing that the court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*,

501 U.S. 722, 750 (1991). Relevant here, a fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Thus, procedural default, although otherwise a bar to federal habeas review, may be excused in certain circumstances.

If the petitioner successfully runs the procedural-default gauntlet for a particular claim, then a federal court can at least consider the merits of that federal habeas claim. But under AEDPA, a federal court may not grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000).

Alternatively, under the "unreasonable application" path of AEDPA, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams*, 529 U.S. at 413. But even if a federal court independently concludes that the relevant state court decision applied clearly established federal law erroneously, still the writ does not necessarily issue; rather, the state court's application must be objectively unreasonable. *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003). "This is a difficult

standard to meet; 'unreasonable' means 'something like lying well outside the bound-aries of permissible differences of opinion.'" *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)).

### III. Analysis

Cathey advances three principal arguments why his counsel was ineffective: (1) both at trial and on appeal, his counsel failed to challenge the trial court's delay in ruling on the central motion in limine, causing him to testify and then be im-peached by his prior conviction, Pet. at 5–6; (2) both at trial and on appeal, his counsel failed to challenge the trial court's decision to allow impeachment via his prior con-viction for aggravated battery, *id.* at 6; and (3) at trial, his counsel failed to investi-gate Kendro Earl as a potential witness, *id.* at 6–8.

### A. Motion in Limine

Cathey first argues that his counsel was ineffective at trial for failing to file a post-trial motion challenging the delayed ruling on the motion in limine and then, after trial, ineffective on direct appeal for not raising the argument. The State re-sponds principally that Cathey has procedurally defaulted this claim: after the Illi-nois Supreme Court remanded the case for further proceedings, Cathey's post-convic-tion counsel did not again raise the claim on appeal to the Illinois Appellate Court or in the petition for leave to appeal to the Illinois Supreme Court, and Cathey's pro se efforts to do so did not suffice. R. 18, State's Resp. Br. at 26–28.

13

## 1. Procedural Default

Whether Cathey procedurally defaulted this claim does not have a straightforward answer because of the litigation history in state court. The goal of AEDPA is to "promot[e] comity, finality, and federalism by giving state courts the first opportunity to review a claim, and to correct any constitutional violation in the first instance." *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011) (cleaned up). As mentioned previously, one way of promoting that goal is "to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts," so "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. The Supreme Court has emphasized that the presentation requirement is not so restrictive that a petitioner must "invoke *any possible* avenue of state court review." *Id.* at 844 (emphasis in original). Instead, ordinarily the petitioner must "raise the issue at each and every level in the state court system." *Sanders v. Radtke*, 48 F.4th 502, 509 (7th Cir. 2022) (cleaned up).

From one perspective, Cathey did just that. Remember that Cathey's post-conviction petition worked its way through the Illinois appellate process twice; the first time, he pressed his ineffective-assistance-of-counsel claim at "each and every level." *Sanders*, 48 F.4th at 509; *see Cathey I*, 965 N.E.2d at 1113–15. Arguably Cathey thus avoided procedural default. *Cf. Wright v. Breitenbach*, 2025 WL 31443, at *3–6 (9th Cir. Jan 6, 2025) (Christen, J., dissenting) (arguing that petitioner "was not required

14

to raise [certain] claims a second time" after state supreme court remand) (non-precedential disposition). So one way to look at it is that Cathey presented the claim through "one" round of state court review. *Boerckel*, 526 U.S. at 845. But the inquiry also asks whether that review was "complete" or "full." *Id.* Here, Cathey's presentation of this theory of ineffectiveness was incomplete for two related reasons.

First, requiring Cathey to continue pressing his claim after the remand promotes AEDPA's goals. "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the *principal* forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (emphasis added). But that focus on state courts as the principal forum would be undermined if Cathey, after obtaining a *favorable* decision remanding his post-conviction petition to the trial court, could immediately come to federal court and seek a writ of habeas corpus. *Duncan v. Walker*, 533 U.S. 167, 180 (2001) ("A diminution of statutory incentives to proceed first in state court would also increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce."); *Rose v. Lundy*, 455 U.S. 509, 520 (1982) ("[S]trict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition."). So Cathey needed to re-raise his arguments in the context of the second stage of post-conviction proceedings, where there was no obstacle to continue to present the claim to the state court.

15

Second, civil litigation ordinarily understands a remand to be just one moment in an incomplete process. In federal court, judgments are not final "unless the remand is for a purely ministerial purpose, involving no discretion." *Richardson v. Gramley*, 998 F.2d 463, 465 (7th Cir. 1993) (cleaned up) (collecting cases). So too in Illinois. *See Cory Corp. v. Fitzgerald*, 86 N.E.2d 363, 366 (Ill. 1949) ("[W]here a cause is remanded for a new trial or other further proceedings involving disputed questions of law or fact, the judgment of the Appellate Court is not of a final character."). Cathey's post-conviction proceedings continued on after the Illinois Supreme Court, and he had a viable path for presenting his claims to the state courts.[7] He thus procedurally defaulted by not pursuing that path to completion.

In the second round of post-conviction proceedings, Cathey did file a pro se motion to supplement his counsel's appellate brief with his ineffective-assistance claim surrounding the delayed ruling on the motion in limine on appeal. Pro Se Mot.

---

[7]The Court notes that some out-of-circuit decisions have addressed somewhat similar scenarios. For example, the Ninth Circuit determined, in a split decision, that a petitioner procedurally defaulted certain claims that he failed to raise after remand from the Nevada Supreme Court. *Wright*, 2025 WL 31443, at *1–2. The Eighth Circuit has reached a slightly different conclusion: where the Missouri high court does not address a constitutional basis for relief, rejects a related state law argument, but remands other, unrelated issues for further proceedings, the petitioner has not procedurally defaulted his constitutional claim by not re-raising it after remand. *Grass v. Reitz*, 643 F.3d 579, 583–86 (8th Cir. 2011).

Cathey's is an easier case than those two. Although *Wright* and *Grass* reach conclusions that might appear in tension with each other, both decisions evaluated whether a petitioner must press claims that were *unaddressed* (and arguably implicitly rejected) by the highest state court. But the claim here—ineffective assistance of trial and appellate counsel regarding the motion in limine—was squarely and *favorably* analyzed by the Illinois Supreme Court and remanded to the trial court so that second-stage proceedings could take place. *Cathey I*, 965 N.E.2d at 1115–18.

to File Supp. at 1–5; *see also* Pro Se Pet. for Leave to Appeal at 2–13, 18 (raising same issue in second petition for leave to appeal to Illinois Supreme Court). As mentioned earlier, the Illinois Appellate Court denied his motion. Pro Se Mot. to File Supp. at 7. The State contends that this ruling was clearly couched in the prohibition on hybrid representation, which would be an adequate and independent state law ground that bars federal habeas review. State's Resp. Br. at 27–28 (citing *Booker v. Baker*, 74 F.4th 889, 892–94 (7th Cir. 2023)).

The Illinois Appellate Court did not spell out its basis for denying Cathey's motion to supplement. Instead, it referenced Cathey's pro se motion and attached brief as well as the fact that he was being represented by counsel before stating that his motion was denied (but without further explanation). Pro Se Mot. to File Supp. at 7. So if the Illinois Appellate Court did not reject Cathey's supplemental filing on an adequate and independent state law ground, then Cathey would have raised his motion-in-limine argument at all levels of state court review the second time around too and thus would not have procedurally defaulted. *See Harris*, 489 U.S. at 263.

Although unclear, the Illinois Appellate Court's summary denial suffices as an adequate and independent state law ground. Federal courts "presume that there is no independent and adequate state ground … when the decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion." *Coleman*, 501 U.S. at 735 (cleaned up). So where it is unclear why a state court rejected a claim, the Court "must make a determination on the record that

the state court was presented with." *Woods v. Schwartz*, 589 F.3d 368, 375 (7th Cir. 2009). "[R]ead in conjunction with all of the surrounding circumstances" of Cathey's appeal, *id.* at 376—namely, the later adjudication on the merits of the one claim his post-conviction counsel raised, the reference in the summary order to the fact he was represented by counsel, and the corresponding observation that his motion to supplement was submitted pro se—the Court concludes that the state court summarily applied the bar on hybrid representation, which is an adequate and independent state procedural ground, *Booker*, 74 F.4th at 892–94. In other words, there is no reason to think that the Illinois Appellate Court's denial of Cathey's motion was a decision on the merits of the pro se supplement.

Cathey thus procedurally defaulted for two related reasons. First, it was not enough that he raised his argument the first time around, even though it was presented at each level of state court review. Second, his pro se efforts to re-raise the claim the second time around were rejected on a state procedural ground.

### 2. Excusing Procedural Default

Cathey attempts to overcome the procedural default by invoking the two usual exceptions: (a) cause and prejudice and (b) actual innocence. *See House*, 547 U.S. at 536. *See generally* Reply Br.

On cause and prejudice, Cathey contends that he satisfies the exception's requirements because his post-conviction counsel was ineffective for failing to raise the challenge to the motion in limine on appeal the second time around. Reply Br. at 17–18, 31. But because Cathey had no constitutional right to counsel in state post-

18

conviction proceedings, he "must bear the risk of attorney error that results in a procedural default." *Coleman*, 501 U.S. at 752–53 (cleaned up).

And the narrow exception to that rule does not apply to Cathey. The Supreme Court has recognized that "[i]nadequate assistance of counsel at initial-review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial" if state law requires ineffective-assistance claims to be raised only in collateral proceedings, *Martinez v. Ryan*, 566 U.S. 1, 9, 17 (2012), or if it is "virtually impossible" under state law to do otherwise, *Trevino v. Thaler*, 569 U.S. 413, 423–28 (2013) (cleaned up). *Martinez* and *Trevino* ultimately, however, apply only to the limited context of *initial*-review proceedings and "does not concern attorney errors in other kinds of proceedings, including *appeals from initial-review collateral proceedings*." *Martinez*, 566 U.S. at 16 (emphasis added). And even if the exception might apply, Illinois also allows criminal defendants to raise ineffective-assistance-of-trial-counsel claims on direct appeal, so the *Martinez-Trevino* exception does not apply for this separate reason. *Crutchfield v. Dennison*, 910 F.3d 968, 976–78 (7th Cir. 2018). Nor can ineffective assistance of post-conviction counsel constitute cause to excuse the procedural default of a claim for ineffective assistance of *appellate* counsel. *See Davila v. Davis*, 582 U.S. 521, 530–31 (2017).

On Cathey's claim of actual innocence, Reply Br. at 1–13, 19–29, actual innocence is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup v. Deno*, 513 U.S. 298, 315 (1995) (cleaned up); *see also McQuiggin v. Perkins*, 569 U.S. 383, 392–93

(2013). But this is an "onerous" burden for Cathey to meet, *Dixon v. Williams*, 93 F.4th 394, 403 (7th Cir. 2024), and "tenable actual-innocence gateway pleas are rare," *McQuiggin*, 569 U.S. at 386. In making this determination, the Court must "conduct a comprehensive assessment that takes into account any reliable evidence probative of petitioner's innocence or guilt, even evidence that was previously excluded," without considering whether the evidence is admissible by rule. *Dixon*, 93 F.4th at 403 (cleaned up). Reliable evidence includes "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"; in other words, "documentary, biological (DNA), or other powerful evidence." *Id.* (cleaned up). The evidence is evaluated to determine whether "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* (cleaned up).

Cathey relies on two pieces of "new" evidence (in other words, evidence "not presented at trial," *Gladney v. Pollard*, 799 F.3d 889, 898 (7th Cir. 2015) (cleaned up)). First, Cathey points to Earl's affidavit in which Earl avers that he saw Brian with a firearm during the hour before the shooting and that Brian intended to get backup and drive a less recognizable car in case anything happened. Reply Br. at 1–5; Earl Aff. at 1. Second, Cathey refers to a video statement and affidavit by Sterling (the shooting victim), in which Sterling says that he purportedly gave Brian a gun and attests that Cathey definitively did not shoot him. Reply Br. at 1–5, 27–29; R. 19-33, Exh. GG, Successive Post-Conviction Pet. at 18–21, 27–31, 37–38. Cathey contends that this new testimony bolsters his version of the events and further

undermines the credibility of Brian, who, Cathey emphasizes, provided inconsistent testimony at trial. Reply Br. at 1–13, 19–30.

Cathey cannot meet the high burden for showing actual innocence. Although he may have provided evidence that could fortify his own retelling, neither affiant was an *eyewitness*: Earl's affidavit discusses events at a different setting that preceded the incident, Earl Aff. at 1, and Sterling's statements may provide background but do not actually discuss the event, for which he has *no* memory, *Cathey III*, 2022 WL 17812735 ¶ 12. People who could "corroborate[] an important point of [Cathey's] version of the back-story" but "provide[] no details of the … shooting itself" might raise a "*possible* inference that might lead a juror to acquit," but the actual-innocence gateway requires a conclusion that "it is likely that *no* reasonable juror would have convicted." *Gladney*, 799 F.3d at 899–900 (first emphasis added). For Cathey, his new evidence critically does not definitively disprove the gunshot-residue results, his behavior as observed by the police, or Brian's testimony. So Cathey's new evidence might support his version of events, but it does not "confidently demonstrate his innocence." *Dixon*, 93 F.4th at 405; *see also Schlup*, 513 U.S. at 329 ("The meaning of actual innocence … does not merely require a showing that a reasonable doubt exists in the light of the new evidence ….").[8]

---

[8]To the extent that Cathey also intends to make a substantive claim for actual innocence, the Court rejects it. The Supreme Court has never recognized actual innocence as a standalone ground for habeas relief. *Cal v. Garnett*, 991 F.3d 843, 850–51 (7th Cir. 2021). And in any event, "[a]ll indications … point to a standard of proof for substantive actual innocence claims that is even more demanding than that for gateway actual innocence claims." *Dixon*, 93 F.4th at 406–07. So because Cathey fails to meet the already-high burden for

### 3. The Merits

Even if Cathey did not procedurally default or could excuse that default, he faces an uphill battle in prevailing on his ineffective-assistance claim. The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland*, 466 U.S. at 684–86. To prove that he was denied that right, Cathey must show first "that counsel's performance was deficient" and second "that the deficient performance prejudiced the defense." *Id.* at 687. Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Prejudice meanwhile requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" such that "confidence in the outcome" is "undermine[d]." *Id.* at 694.

The Court begins with counsel's performance. Ordinarily, review is "doubly deferential"—one layer of deference is owed to counsel's performance and another because of the lens through which federal courts review state convictions under § 2254(d). *Cullen*, 563 U.S. at 190 (cleaned up). But the Court looks "to the last reasoned state court opinion addressing each claim," *Carrion v. Butler*, 835 F.3d 764, 772 (7th Cir. 2016) (cleaned up), and because the last state court to consider Cathey's motion-in-limine theory assessed only prejudice, the Court's review of counsel's performance is de novo, *see Cone*, 556 U.S. at 472; *Thomas v. Clements*, 789 F.3d 760,

---

gateway actual innocence, he could not meet the even higher burden of substantive actual innocence.

766–68 (7th Cir. 2015). But even under de novo review (that is, without deference to the state court under AEDPA), the Court must still "afford[] a heavy measure of deference" by "judg[ing] the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Thomas*, 789 F.3d at 766–68 (cleaned up); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

Cathey argues that his counsel was ineffective for not challenging the trial court's delayed ruling on his motion in limine at trial (for failing to make the argument in his post-trial motion) and on direct appeal (for failing to raise the issue). Pet. at 5–6; Reply Br. at 15–17. The two issues are intertwined because Illinois requires both an objection at trial and a written post-trial motion to preserve an argument for appeal, *see People v. Enoch*, 522 N.E.2d 1124, 1130 (Ill. 1988), and the failure to do either can constitute a basis for a successful ineffective-assistance claim, *see Enoch v. Gramley*, 70 F.3d 1490, 1502–03 (7th Cir. 1995); *Johnston v. Mizell*, 912 F.2d 172, 176 (7th Cir. 1990); *Ramirez v. Tegels*, 963 F.3d 604, 613 (7th Cir. 2020). Although at its core, Cathey's claim is one grounded in state law, that still can be the predicate for ineffective assistance of counsel under the Sixth Amendment. *Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013).[9]

---

[9]As the State recognizes, Cathey may also be attempting to argue that the delayed ruling on the motion in limine itself violated his right to due process. *Compare* State's Resp. Br. at 17, 26–29, *with* Reply Br. at 16–17. As an initial matter, the analysis for this claim would proceed in largely the same way: because Cathey could have raised but did not raise this argument on direct appeal and thus procedurally defaulted it, he would need to show cause and prejudice, which likely takes the form of ineffective assistance of trial and appellate counsel. *See Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). But Cathey also cannot

23

Because Cathey procedurally defaulted this claim, no evidentiary hearing is warranted, and without an evidentiary hearing, it is difficult to know whether counsel's choice not to raise certain arguments was a strategic choice. *See Torres-Chavez v. United States*, 828 F.3d 582, 586–87 (7th Cir. 2016) (per curiam). If there were a developed record on these claims, then the inquiry would focus on whether counsel "abandoned a nonfrivolous claim that was both obvious and clearly stronger" and lacked "a strategic justification." *Ramirez*, 963 F.3d at 613 (cleaned up). But due to Cathey's procedural default, he cannot develop necessary facts in support of the claim. In any event, for the sake of completeness, the Court evaluates counsel's performance on the current record.

First, an argument that the trial court erred in delaying a ruling on the motion in limine was obvious. It was a central dispute both before trial and at the moment that the State sought to introduce Cathey's prior conviction as impeachment evidence. R. 19-27, Exh. AA, Trial Tr. at 9–11, 243–47. It is true that the most applicable case, *People v. Patrick*, 908 N.E.2d 1 (Ill. 2009), was decided after Cathey's appeal. *See id.* at 8–9 (holding that blanket policy deferring ruling on any motions in limine about defendant's prior convictions was abuse of discretion). But counsel sometimes

---

make a separate claim for a due-process violation because the argument he makes is not constitutional in nature and thus not cognizable in a federal habeas petition. *See* 28 U.S.C. § 2254(a); *People v. Averett*, 927 N.E.2d 1191, 1198–1200 (Ill. 2010) (holding that even blanket policy refusing to rule on motions in limine was neither structural nor constitutional error); *Tyson v. Adkins*, 2024 WL 3904649, at *5–6 (N.D. Ill. Aug. 22, 2024) (collecting decisions on habeas petitions from Illinois prisoners stating same); *see also United States v. Books*, 914 F.3d 574, 577, 580–81 (7th Cir. 2019) (concluding that similar argument lacks merit under existing Supreme Court precedent).

is expected to "anticipate arguments foreshadowed but not yet adopted by existing case law." *Harris v. United States*, 13 F.4th 623, 629 (7th Cir. 2021) (cleaned up). And "[n]umerous other" appeals in Illinois raised the same argument, and several other states reached similar decisions. *Cathey I*, 965 N.E.2d at 1116–17 & n.1 (collecting cases); *see also Bridges v. United States*, 991 F.3d 793, 806–07 (7th Cir. 2021) (noting that other courts and counsel raising an issue could show that the failure to make the same argument is deficient performance).

But the argument does not appear to be "clearly stronger" than all arguments that Cathey's counsel raised in his post-trial motion and on appeal. Appellate counsel is expected to "winnow[]" arguments and "is not required to present every non-frivolous claim." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (cleaned up). This is a high standard in part "because the comparative strength of two claims is usually debatable." *Id.* at 898 (cleaned up). In his post-trial motion, Cathey's counsel raised two arguments: that the evidence was insufficient to support the judgment and that the trial court abused its discretion in admitting the impeachment evidence. Trial Tr. at 332–33.

On appeal, Cathey's counsel again made those arguments and also challenged the length of Cathey's sentence. *See generally* R. 19-2, Exh. B, Direct Appeal Br. To be sure, the delayed-ruling challenge was clearly stronger than counsel's argument about the sufficiency of the evidence because counsel acknowledged that the evidence was "closely balanced." *Id.* at 15, 18; *see also Shaw*, 721 F.3d at 915 (considering sufficiency-of-the-evidence argument "dead on arrival" in light of counsel's "concession

that the evidence could support either conviction or acquittal"). Nor was counsel's challenge to Cathey's sentence (which could have been as long as 60 years) particularly strong: counsel argued only that the trial court ignored Cathey's rehabilitative potential without citing any evidence of that potential. Direct Appeal Br. at 20–21.

But the delayed-ruling argument is not clearly stronger than the wholesale challenge to the admission of the impeachment evidence. Defense counsel presented a non-frivolous claim that the trial court erred in allowing the State to impeach Cathey on a prior, nearly identical conviction. Direct Appeal Br. at 14–19. This argument was not "certain to fail" or "so weak that pursuing it was the equivalent of filing no brief at all." *Neal v. United States*, 155 F.4th 678, 690 (7th Cir. 2025) (cleaned up), *cert. denied*, No. 25-7039, — S. Ct. —, 2026 WL 1052068 (Apr. 20, 2026). Because Cathey cannot show that the delayed-ruling argument was clearly stronger, he fails to demonstrate that counsel's performance was deficient.

If, however, counsel's performance were to be deemed deficient, Cathey likely could show prejudice. Unlike the performance requirement, courts can evaluate prejudice with the benefit of hindsight, *Shaw*, 721 F.3d at 918, but because the state court did evaluate this prong, the Court reviews prejudice with deference under AEDPA. As referenced before, "AEDPA's standard is intentionally difficult to meet," so Cathey must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up).

26

The state court's reasoning on this issue was brief. As to Cathey's argument for ineffective assistance of trial counsel, the trial court referenced other evidence that still supported his conviction, regardless of whether Cathey testified. Trial Court Order at 11. And in rejecting Cathey's corresponding argument for ineffective assistance of appellate counsel, the court concluded that Cathey failed to show prejudice because he did not demonstrate a reasonable probability that the outcome of his appeal would have been different. *Id.*

Even under the heightened deference to the state court, Cathey can show a sufficient likelihood of prejudice. In hindsight, Cathey could have benefited from the Illinois Supreme Court's decision in *Patrick*, which was pending while Cathey's own petition to appeal was pending. *Cathey I*, 965 N.E.2d at 1117–18. And under *Patrick*, there is a reasonable probability that he would have received a new trial. Cathey advanced a theory of self-defense, and he was acquitted of a greater charge but convicted of a lesser charge (evidence "that, to some degree, the jury believed [Cathey] was justified in his use of force")—both facts materially similar to those in *Patrick* that led the Illinois Supreme Court to remand for a new trial. 908 N.E.2d at 9. And if Cathey knew ahead of time that he would be impeached, he could have chosen not to testify, impeached Brian himself, or drawn the sting out of his own prior conviction. *See id.* These facts, the Illinois Supreme Court reasoned, showed that the erroneously

27

delayed ruling on the motion in limine was not "harmless beyond a reasonable doubt." *Id.*[10]

Although AEDPA requires deference, the trial court's wholly conclusory assessment that Cathey showed no prejudice "does not permit a conclusion that the state court[] reasonably applied" the ineffective-assistance standard. *See McManus v. Neal*, 779 F.3d 634, 656–60 (7th Cir. 2015). That is enough to "undermine confidence in the outcome." *Cook v. Foster*, 948 F.3d 896, 909 (7th Cir. 2020) (quoting *Strickland*, 466 U.S. at 694) (reiterating that petitioner need not show outcome more likely than not would have been different). In any event, however, as explained in detail above, Cathey failed to satisfy the performance element of the ineffective-assistance test.

## B. One-Act, One-Crime

Cathey next argues that his counsel was ineffective at trial and on direct appeal for failing to challenge the trial court's decision to allow impeachment on his prior conviction for aggravated battery. Pet. at 6. Cathey contends that his 1992 convictions for attempted first-degree murder and aggravated battery violate Illinois's one-act, one-crime rule as well as the constitutional protection against double jeopardy, so he should not have been impeached on one if he could not be impeached on

---

[10]The Illinois Supreme Court assessed whether the State had shown harmless error beyond a reasonable doubt because the error was "of a constitutional magnitude." *Patrick*, 908 N.E.2d at 8–9. Although *Averett* later clarified that delaying a ruling on a motion in limine is not strictly a constitutional error, 927 N.E.2d at 1199–1200, Illinois courts continue to review claims like Cathey's for harmless error beyond a reasonable doubt, *see People v. Mullins*, 949 N.E.2d 611, 624–25 (Ill. 2011).

the other. *Id.* He adds in supplemental briefing that his prior conviction for aggravated battery has since been vacated because it is duplicative of his conviction for attempted first-degree murder. R. 24, Mot. to Supp.; R. 27, Supp.; *see also People v. Cathey*, 147 N.E.3d 298, 304–08 (Ill. App. Ct. 2019) (*Cathey II*) (describing how Cathey's prior convictions likely violate the one-act, one-crime rule).

But regardless of the merits of this claim, it too is procedurally defaulted. Cathey did not raise this argument in either appeal from the dismissals of his post-conviction petition. *See generally* First Rd. Post-Conviction Appellate Br.; First Rd. Post-Conviction Appellate Reply Br.; Second Rd. Post-Conviction Appellate Br.; Second Rd. Post-Conviction Reply Br. And as discussed previously, Cathey cannot excuse this procedural default either by showing cause and prejudice or gateway actual innocence. *Supra* Sec. III.A.2. Cathey also attempts to argue that his procedural default should be excused because he has diligently pursued his claim since belatedly learning of the argument, Supp. at 3; *Cathey II*, 147 N.E.3d at 308, but "alleged unawareness" does not excuse procedural default, *Salberg v. United States*, 969 F.2d 379, 382–83 (7th Cir. 1992).

Cathey's argument would also fail on the merits. Cathey develops several theories why his 1992 convictions were invalid, but this habeas petition does not concern those convictions. Instead, this petition asks whether Cathey's counsel was ineffective for not preventing his impeachment on these purportedly invalid convictions. Even if his underlying convictions were constitutionally invalid, Cathey cites no authority for the proposition that they could not be used for impeachment purposes. *See*

29

*generally* Pet. To the contrary, the Supreme Court has recognized only that convictions cannot be used as impeachment if those convictions were obtained in proceedings where a defendant was denied his constitutional right to counsel. *Loper v. Beto*, 405 U.S. 473, 480–83 (1972); *see also Custis v. United States*, 511 U.S. 485, 496 (1994) (declining to expand grounds for invalidating prior convictions to ineffective-assistance claims because "failure to appoint counsel for an indigent defendant was a unique constitutional defect"). And state law does not support a stronger claim: because convictions imposed in violation of the one-act, one-crime rule are "voidable, not void," Cathey needed to take affirmative steps to invalidate his prior convictions. *Cathey II*, 147 N.E.2d at 308. But until those convictions were invalidated, Cathey could be impeached on them. *United States v. Empire Packing Co.*, 174 F.2d 16, 20 (7th Cir. 1949). So his ineffective-assistance claim fails: counsel's performance was not deficient, and Cathey was not prejudiced by the omission of a meritless argument.

## C. Kendro Earl

Finally, Cathey argues that trial counsel was ineffective for failing to investigate Kendro Earl as a potential witness. Pet. at 6–8. In Cathey's view, counsel should have investigated Earl because he was mentioned in Xavier's grand jury testimony. *Cathey III*, 2022 WL 17812735 ¶¶ 29, 33. The State addresses this claim on the merits because there is no dispute that Cathey preserved this argument for federal habeas review. *See generally* State's Resp. Br. at 18–26. So the Court evaluates whether trial counsel was ineffective under the *Strickland* test.

The last reasoned state court decision evaluated only the prejudice requirement, so on performance, the Court's review is de novo but with deference under *Strickland. Thomas*, 789 F.3d at 766–68. "[F]ailure to investigate potential witnesses can constitute deficient performance." *Davis v. Lambert*, 388 F.3d 1052, 1062 (7th Cir. 2004). But counsel need not "track down every lead or … investigate every evidentiary possibility before choosing a defense and developing it." *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987).

Cathey's trial counsel conducted a "reasonable investigation" based on the information known to him at the time of his conduct. *Strickland*, 466 U.S. at 690–91. Xavier mentioned Earl only to the extent that the two were together the night of the shooting, *Cathey III*, 2022 WL 17812735 ¶ 29, but this is far from the kind of lead that might support an ineffective-assistance claim, *see United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002) ("An ineffective assistance of counsel claim cannot rest upon counsel's alleged failure to engage in a scavenger hunt …."). For example, Earl was not an eyewitness to the shooting, *see United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 251 (7th Cir. 2003); was not otherwise identified by Cathey as even a potential witness, *see Davis*, 388 F.3d at 1062–63; and did not call counsel to volunteer his testimony, *see Hall v. Washington*, 106 F.3d 742, 750 (7th Cir. 1997). Quite the opposite: Earl in his affidavit makes clear that he did not previously come forward— neither to the police nor to Cathey's counsel—because of his friendship with the Finleys. Earl Aff. at 1. So Cathey cannot overcome the "heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

Cathey also cannot show that counsel's performance, if deficient, prejudiced him. The state court rejected Cathey's argument on this prong, so AEDPA deference requires reviewing the state court's decision only to see if it "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods*, 575 U.S. at 316 (cleaned up). Cathey cannot show that the state court unreasonably applied the proper standard because the state court appropriately evaluated the probative value of Earl's testimony. Because Earl was not an eyewitness and thus could not testify in support of Cathey's ultimate claim that Brian arrived at the scene with a firearm, the state court reasonably concluded that there was no reasonable probability that Earl's proffered testimony would have made a difference at trial. *Cathey III*, 2022 WL 17812735 ¶ 44. And the state court then reasonably considered the balance of evidence—Brian's testimony, the damage to the car and the blood inside it, the live cartridge found near Cathey, and Cathey's omission of any mention of an altercation in his statement to the police—to conclude that Cathey was not prejudiced. *Id.* ¶¶ 45–46.[11]

Cathey cannot show that his trial counsel was ineffective for failing to investigate Earl. One more thing is worth discussing: Cathey also argues under this claim

---

[11]The Court notes that Sterling's affidavit is not considered among the rest of the evidence. "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181. Sterling's affidavit was filed with Cathey's successive post-conviction petition on August 12, 2022, Successive Post-Conviction Pet. at 2, 37–38, but the appeal relevant to these proceedings was taken in 2021 and fully briefed by June 2022, Second Rd. Post-Conviction Reply Br. at 1. And until the state court has a full opportunity to consider Cathey's successive petition, the Court declines to consider its substance.

that he was constructively denied assistance of counsel (and thus need not show that he was prejudiced by counsel's performance). Reply Br. at 13–15. Not only did Cathey not raise this argument in state court, but his argument here is little more than a conclusory recitation of the claim. Cathey makes no specific arguments why counsel's failure to investigate Earl (or any other failure, for that matter) is tantamount to abandonment or interference by the state with counsel's representation. *See Smith v. Brown*, 764 F.3d 790, 796–97 (7th Cir. 2014) (citing *United States v. Cronic*, 466 U.S. 648, 659 (1984)). So Cathey does not meet the high bar that triggers a presumption of prejudice, *id.* at 797, and his constructive-denial claim fails.

## IV. Conclusion

For the reasons discussed, Cathey's petition for writ of habeas corpus, R. 1, is denied. A certificate of appealability requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). On Cathey's ineffective-assistance claim relating to the delayed ruling on his motion in limine, the Court concluded that Cathey procedurally defaulted the claim in a novel procedural context but that he had a colorable showing on the merits. Because "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling," *Slack v. McDonald*, 529 U.S. 473, 484 (2000), the Court

33

issues a certificate of appealability on Cathey's theory of ineffective assistance of counsel relating to the delayed ruling on the motion in limine.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 5, 2026